**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| **RANDOPLH MARTIN,** ) | |
| **and CATHERINE MARTIN,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 3:13-CV-03130** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant** ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant United States'
Motion to Dismiss Plaintiffs' 1996, 1997, and 2001 Claims for
Refund (d/e 64).  In the Second Amended Complaint, Plaintiffs
Randolph Martin and Catherine Martin seek to recover excessive
taxes retained by Defendant for the years 1996, 1997, 2001, and
2002.  Plaintiffs allege that, after allowing all proper adjustments on
Plaintiffs' airplane business, which suffered losses in 2001,
Plaintiffs are entitled to a refund of $297,819 for 1996; $191,709
for 1997; $187,652 for 2001; and $5,675 for 2002, plus interest,
costs, and reasonable litigation costs.  Sec. Am. Compl. ¶ 17.

On June 3, 2016, Defendant filed a Motion to Dismiss Plaintiffs' 1996, 1997, and 2001 Claims for Refund. Defendant argues that (1) this Court lacks jurisdiction to hear the 1996, 1997, and 2001 refund claims; (2) Plaintiffs lack standing to bring the 1996, 1997, and 2001 refund claims before this Court; and (3) in the alternative, Plaintiffs' are judicially estopped from bringing the 1996, 1997, and 2001 refund claims.

The Motion to Dismiss is denied. The Court has jurisdiction over the claims, and Plaintiffs have standing to bring the claims. As for Defendant's judicial estoppel argument, given the limited materials the Court may consider on a motion to dismiss and the need to draw all reasonable inferences in Plaintiffs' favor, the Court cannot conclude at this time whether judicial estoppel is appropriate.

## I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of

the plaintiff.   Alicea-Hernandez  v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).  However, the plaintiff bears the burden of proving the jurisdictional requirements have been met. Ctr. for Dermatology & Skin Cancer Ltd. v. Burwell, 770 F.3d 586, 588  (7th Cir. 2014).  "The court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  Alicea-Hernandez, 320 F.3d at 701.

The plaintiff also bears the burden of establishing standing.  A plaintiff must allege that (1) he suffered an injury that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely that a favorable decision will redress the injury.  Berger v. Nat'l Collegiate Athletic Ass'n, 843 F.3d 285, 289 (7th Cir. 2016). When standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations of standing with competent proof.  Reid L. v. Ill. State Bd. of Educ., 358 F.3d 511, 515 (7th Cir. 2004); Retired Chi. Police Ass'n v. City of Chi., 76 F.3d 856, 862 (7th Cir. 1996).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions. St. John v. Cach, LLC, 822 F.3d 388, 389 (7th Cir. 2016). A plaintiff opposing a Rule 12(b)(6) motion to dismiss "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## II. BACKGROUND

On May 24, 2002, Plaintiffs commenced a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Central District of Illinois, Case No. 05-72273 (Bankruptcy Action). The Court takes judicial notice of the pleadings filed in the Bankruptcy Action. See Geinosky, 675 F.3d at 745 n.1 (in ruling on a motion to dismiss, courts can consider "information that is subject to proper judicial notice"); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir.1994) (holding that district court may take

judicial notice of matters of public record, including public court documents, when considering a Rule 12(b)(6) motion to dismiss). On October 31, 2002, the Bankruptcy Court entered an order discharging Plaintiffs. <u>See</u> Resp., Ex. L (d/e 68-12) (Bankruptcy Action docket sheet). The Bankruptcy Action remained pending until July 12, 2005. <u>See</u> <u>id.</u>

Plaintiffs filed their original 2001 tax return on or about January 18, 2003, two and a half months after they were discharged in bankruptcy. <u>See</u> Resp., Ex. A (d/e 68-1) (2001 tax return signed by Plaintiffs on January 18, 2003).[1] On or about February 15, 2005, approximately five months before the Bankruptcy Action was closed, Plaintiffs filed an amended 2001 tax return claiming overpayment of taxes in the amount of $163,124. Sec. Am. Compl. ¶ 6. They also filed amended tax returns for 1996 and 1997 claiming overpayment of taxes in the amounts of $297,819 and $191,709 respectively, and requesting a refund in said amounts. <u>Id.</u> ¶ 10. Plaintiffs allege that the basis for the

---

[1] The Second Amended Complaint alleges that Plaintiffs filed their original 2001 tax return on or about January 14, 2002. Sec. Am. Compl. ¶ 5. However, Plaintiffs attached the 2001 tax return to their Response, which shows Plaintiffs signed the returns on January 18, 2003.

refund for the 2001 tax year was substantially due to losses from Plaintiffs' interest in Capital Aircraft, Inc., Capital Aircraft Parts, LLC, Martin Leasing, Inc., and other related entities. Id. ¶ 9. The basis for the refunds for years 1996 and 1997 was net operating loss carrybacks from the 2001 tax year pursuant to the amended tax return filed for 2001. Id. ¶ 11. On January 26, 2006, Plaintiffs filed another amended 2001 tax return claiming an overpayment of taxes in the amount of $187,652. Id. ¶ 7. Plaintiffs also filed an amended tax return for 2002, but the 2002 refund claim is not at issue in Defendant's motion to dismiss.

Thereafter, the Internal Revenue Service (IRS) commenced an audit of Plaintiffs' income tax return for the years 1996, 1997, 2001, and 2002. Sec. Am. Compl. ¶ 14. On August 27, 2008, the IRS issued a Notice of Disallowance of Plaintiffs' requests for refunds for calendar years 1996, 1997, and 2001. Id. ¶ 14; see also Resp., Ex. H (d/e 68-8) (Notice of Disallowance only listing years 1996, 1997, and 2001). On February 12, 2009, Plaintiffs filed a Protest Letter appealing the disallowance. Id. ¶ 15; see also Resp., Ex. I (d/e 68-9) (appealing years 1996, 1997, 2001, 2002, and 2003). On May 11, 2011, the IRS denied Plaintiffs' claims for

refund for calendar years 1996, 1997, 2001, and 2002.  Sec. Am.
Compl. ¶ 16.

On May 6, 2013, Plaintiffs filed this lawsuit pro se alleging
that they are entitled to a refund of excessive tax paid for years
1996, 1997, and 2001.  See Compl. (d/e 1).  When Plaintiffs initially
filed this lawsuit, Plaintiffs had not disclosed the tax refund claims
in the Bankruptcy Action.

On January 29, 2014, the United States Trustee for Region 10
filed a Motion to Reopen Bankruptcy Estate and Appoint Trustee.
Resp., Ex. N (d/e 68-14).  The motion indicated that Plaintiff
Randolph Martin, through his attorney, had recently contacted the
office of the United States Trustee to advise that past tax returns
may be amended to claim a substantial refund.  Id. ¶ 3 (also noting
that the refund was first identified in 2005 and was disallowed by
the IRS but that the claim was preserved by the debtor).  On
February 11, 2014, the Bankruptcy Action was reopened.  See
Resp., Ex. O (d/e 68-15).

On March 7, 2014, the bankruptcy trustee filed a Notice of
Intent to Abandon that was sent to the creditors.  See Resp., Ex. P
(d/e 68-16).  The Notice indicated that if no objections were filed by

the objection deadline, the potential claims for the refund of federal income tax would be deemed abandoned.  Id.  No objections were filed, and the bankruptcy trustee filed a report of no distribution on April 15, 2014.  See Resp., Ex. L (Bankruptcy Action docket sheet also indicating that "Assets Abandoned (without deducting any secured claims): $0.00").  On May 6, 2014, the Bankruptcy Action was closed.  Id.

Plaintiffs filed an Amended Complaint on April 7, 2014 (d/e 12).  After Defendant's Motion to Dismiss for insufficient service was denied, Defendant filed an Answer (d/e 22) containing a "First Defense" that, "[t]o the extent that the plaintiff has failed to comply with the statutory period of limitations in which to file a claim for refund, pursuant to 26 U.S.C. § 6511, the complaint must be dismissed for lack of jurisdiction."

On May 20, 2016, Plaintiffs filed a Second Amended Complaint.  Sec. Am. Compl. (d/e 63) (deleting the jury demand, amending the refund amounts sought, and adding some additional factual allegations).  On June 3, 2016, Defendant filed an Answer (d/e 66), raising several defenses including lack of jurisdiction; that the 1996, 1997, and 2001 tax liabilities belonged to the bankruptcy

estate when they were filed; that Plaintiffs lacked standing to bring the 1996, 1997, and 2001 refund claims; and that Plaintiffs are judicially estopped from pursuing the refund claims.  Defendant also filed the Motion to Dismiss at issue herein.

### III. ANALYSIS

### A.  This Court has Jurisdiction Over the 1996, 1997, and 2001 Refund Claims

Defendant argues that this Court lacks jurisdiction over the 1996, 1997, and 2001 refund claims because Plaintiffs did not "duly file" their administrative claim with the IRS.

The United States may not be sued without its consent and such consent must be "unequivocally expressed."  <u>Kuznitsky v. United States</u>, 17 F.3d 1029, 1031 (7th Cir. 1994).  The United States may also attach conditions to its consent to be sued.  <u>Id.</u>

The United States has consented to suits for a tax refund but imposed certain conditions on its consent.  <u>Id.</u>  Specifically, pursuant to Title 28, United States Code, Section 1346(a), a district court has jurisdiction over civil actions against the United States for the refund of internal revenue taxes alleged to have been erroneously or illegally collected.  28 U.S.C. § 1346(a); <u>United States</u>

<u>v. Dalm</u>, 494 U.S. 596, 601 (1990).  Before a civil action for the refund of taxes may be brought in the district court, however, a claim for refund must have been "duly filed" with the Secretary of the IRS in accordance with the law and IRS regulations.  26 U.S.C. § 7422(a) [2]; <u>United States v. Clintwood Elkhorn Mining Co.</u>, 553 U.S. 1, 4 (2008); <u>see</u> <u>also</u> 26 U.S.C. § 6511 (providing the time within which a claim must be filed with the IRS).   A district court lacks subject matter jurisdiction over a suit for refund unless the taxpayer has first filed a proper administrative claim with the IRS.  <u>Bartley v. United States</u>, 123 F. 3d 466, 468 (7th Cir. 1997).

Defendant asserts that, when the refund claims were filed by Plaintiffs with the IRS, the claims did not belong to Plaintiffs but belonged to the bankruptcy estate.  Therefore, according to Defendant, those claims were never "duly filed" as required by 26 U.S.C. § 7422, and this Court lacks jurisdiction.

---

[2] 26 U.S.C. § 7422(a): "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have  been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

When an individual debtor files for bankruptcy, the debtor's legal or equitable interest in property becomes part of the bankruptcy estate (with certain exceptions not applicable here). See 11 U.S.C. § 541(a)(1);  Clark v. Rameker, 134 S. Ct. 2242, 2244 (2014).  The definition of property extends to legal claims.  In re Smith, 640 F.2d 888, 890 (7th Cir. 1981) (causes of action are part of the bankruptcy estate).

In addition, the bankruptcy estate includes property that "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start[.]"  Segal v. Rochelle, 382 U.S. 375, 380 (1966) (finding that the debtors' loss-carryback tax refund was property of the estate where the debtors had both prior net income and net loss when the petitions were filed); see also In re Meyers, 616 F.3d 626, 628 (7th Cir. 2010) (noting that even though Segal was decided under the old Bankruptcy Act, the result of Segal is still followed under the Bankruptcy Code).  A claim for a refund of taxes that were paid pre-petition constitutes property of the bankruptcy estate.  See Kokoszka v. Belford, 417 U.S. 642, 647-48 (1974) (finding the income tax refund based on income tax payments

withheld from the petitioner prior to his filing for bankruptcy and

based on earnings prior to filing for bankruptcy were "'sufficiently

rooted in the prebankruptcy past' to be defined as 'property'")

(quoting Segal, 382 U.S. at 380); Meyers, 616 F.3d at 628 (noting

that courts have recognized that tax refunds received after the

bankruptcy petition is filed may represent pre-petition assets and

be part of the bankruptcy estate); In re Lark, 438 B.R. 652, 655

(Bankr. W.D. Wis. 2010) (finding the debtors' interest in or right to

tax refunds when they filed for bankruptcy "constituted an interest

in property"); In re Lock, 329 B.R. 856, 858 (Bankr. S.D. Ill. 2005)

(holding that "proceeds due from a tax overpayment, as in this case,

become property of the [bankruptcy] estate to the extent the

overpayment was made prepetition").

Here, Plaintiffs seek a refund of taxes paid before they filed the

bankruptcy petition for tax years 1996 and 1997.  As for the 2001

tax return, the income tax return suggests that the taxes were also

paid pre-petition.  See Resp., Ex. A (d/e 68-1) (1040 U.S. Individual

Income Tax Return for 2001 showing $72,354 paid by way of 2001

estimated tax payments and applied from the 2000 return and

$100,000 paid with request for an extension of time to file, which

was presumably filed before April 15, 2002).  The basis for the
refunds was substantially due to losses from Plaintiffs' interest in
various business entities for losses occurring in 2001.  Sec. Am.
Compl. ¶¶ 9, 17.  Even though the refund claims were discovered
post-petition (in 2004 or 2005)[3] while the Bankruptcy Action was
still pending, the claims were sufficiently rooted in the pre-
bankruptcy past that the claims were part of the bankruptcy estate.
See Ortega v. Bel Fuse, Inc., 546 B.R. 468, 471-72 (S.D. Fla. 2016)
(interpreting Eleventh Circuit case law to hold that all bankruptcy
debtors "must continuously disclose assets that form part of the
bankruptcy estate") (emphasis omitted).  Therefore, the 1996, 1997,
and 2001 refund claims were part of the bankruptcy estate.

Plaintiffs did not schedule their refund claims in the
bankruptcy case before the Bankruptcy Action was closed the first
time in July 2005.  Therefore, when the Bankruptcy Action was
closed, the claims remained property of the estate.  11 U.S.C.
§ 554(d) ("Unless the court orders otherwise, property of the estate
that is not abandoned under this section and that is not

---

[3] In their Response, Plaintiffs indicate they received "additional information in
2004," after which they filed an amended tax return on February 15, 2005.
Resp. at 12 (d/e 68).

administered in the case remains property of the estate.");

Matthews v. Potter, 316 F. App'x 518, 521 (7th Cir. 2009) (an

unscheduled asset that is not administered by the time the

bankruptcy is closed remains property of the bankruptcy estate).

Because the refund claims remained property of the estate, the

trustee was the real party in interest when the Bankruptcy Action

closed.  See Biesek v. Soo Line R. Co., 440 F.3d 410, 413 (7th Cir.

2006) ("Pre-bankruptcy claims are part of debtors' estates" and,

therefore, the legal claim belonged to the trustee for the benefit of

the debtors' creditors); Matthews, 316 F. App'x at 521 (until the

trustee abandons a legal claim, "only the trustee, as the real party

in interest, has standing to sue"); 11 U.S.C. § 323(a), (b) (the

bankruptcy trustee is the representative of the estate and has the

capacity to sue and be sued).

   Although the 1996, 1997, and 2001 refund claims remained

assets of the bankruptcy estate when the Bankruptcy Action was

closed, Plaintiffs subsequently disclosed the refund claims.  See

Resp., Ex. N (d/e 68-14) (Mot. to Reopen Bankruptcy Estate and

Appoint Trustee).  The Bankruptcy Action was reopened, and the

bankruptcy trustee abandoned the refund claims after giving notice

to the creditors.  <u>See</u> Resp., Exs. O, P, L; <u>see also</u> 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."); <u>Morlan v. Universal Guar. Life Ins. Co.</u>, 298 F.3d 609, 618 (7th Cir. 2002) (noting that the requirement of notice and a hearing means the opportunity for a hearing).  When the bankruptcy trustee abandoned the refund claims in 2014, the claims reverted to Plaintiffs <u>nunc pro tunc</u>, as if the bankruptcy case had never been filed.  <u>See</u> <u>Morlan</u>, 298 F.3d at 617 (holding that "when property of the bankrupt is abandoned, the title 'reverts to the bankrupt, <u>nunc pro tunc</u>, so that he is treated as having owned it continuously'") (internal citations omitted).

Therefore, this Court must decide whether the bankruptcy trustee's abandonment of the claims in 2014 retroactively vested Plaintiffs with the necessary standing to administratively file the refund claims with the IRS in 2005.  Defendant argues that the effects of <u>nunc pro tunc</u> reversion are limited and cannot overcome the strict jurisdictional hurdles set out in § 7422 (requiring that a claim with the IRS be duly filed) and § 6511 (setting the limitation

period for filing the claim with the IRS).  The cases Defendant cites
in support, however, are distinguishable.

Both In re Bentley, 916 F.2d 431 (8th Cir. 1990) and In re
Perlman, 188 B.R. 704 (Bankr. S.D. Fla. 1995), involved the
abandonment of proceeds from the sale of bankruptcy estate
property.   The courts held that the sale of the estate property
triggered a taxable event for which the bankruptcy estate was liable.
Bentley, 916 F. 2d at 433; Perlman, 188 B.R. at 708.  The trustees'
abandonment of the sales proceeds "did not abrogate the tax
consequences of the sale."  Perlman, 188 B.R. at 707, 708 (citing
Bentley, 916 F.2d at 433) (and also noting "[t]here is simply no
retroactive escape from the tax consequences triggered by the
sales").  Here, no such taxable event occurred.  The trustee simply
abandoned the property, which reverted nunc pro tunc to Plaintiffs.

Defendant also cites In re Folks, 211 B.R. 378 (9th Cir. BAP
1997), for the proposition that reversion nunc pro tunc cannot
defeat the timing requirement in Federal Rule of Bankruptcy
Procedure 4004.  Fed. R .Bank. P. 4004 (which requires, in a
Chapter 7 case, that a complaint objecting to discharge be filed no
later than 60 days after the first date set for the meeting of

creditors); <u>see</u> <u>also</u> 11 U.S.C. § 727(c)(1) (providing that the trustee, a creditor, or the United States trustee may object to the granting of a discharge).  However, <u>Folks</u> involved abandonment of an asset to a creditor.  The court simply found that abandonment <u>nunc</u> <u>pro</u> <u>tunc</u> to the creditor did not retroactively vest the creditor with standing as of the time the creditor filed its objection under 11 U.S.C. § 727 and Rule 4004.  <u>Folks</u>, 211 B.R. at 388-89 (noting that "[n]ot even a <u>nunc</u> <u>pro</u> <u>tunc</u> abandonment order can retroactively imbue [the creditor] with standing").  And even the <u>Folks</u> court recognized that an abandonment of the asset "would relate back to the time of filing of the [bankruptcy] petition, retroactively making plaintiff [debtor] a proper party."  <u>Id.</u> at 388 (also noting that the effect of the abandonment <u>nunc</u> <u>pro</u> <u>tunc</u> would retroactively make the debtor a proper plaintiff in the § 727 action).

In the instant case, Plaintiffs were the debtors—not creditors—and the abandonment retroactively made them the proper parties to file the tax refund claims with the IRS.  In that regard, <u>Folks</u> is distinguishable.

Defendant also argues that the abandonment did not retroactively revest Plaintiffs with standing to bring the

administrative refund claims before the IRS because the

bankruptcy trustee abandoned the claims well beyond the statute of

limitations for filing a claim for refund.  Def. Supp. Brief at 5 (d/e

81).  Defendant asserts that standing can only be conferred <u>nunc</u>

<u>pro</u> <u>tunc</u> when the abandonment occurs before the running of the

applicable statute of limitations.  According to Defendant, Plaintiffs

had to file their tax year 2001 refund claim with the IRS by 2008

and, therefore, the bankruptcy trustee had to abandon the 2001

claim before 2008 to confer retroactive standing on Plaintiffs.  <u>Id.</u>

(citing 26 U.S.C. § 6511).  Defendant argues that the only case that

allowed abandonment to retroactively provide standing involved a

case where the inaction of the trustee caused the debtor to file the

claim after the statute of limitations expired.  <u>Id.</u> at 6 (citing

<u>Barletta v. Tedeschi</u>, 121 B.R. 669, 674 (N.D.N.Y. 1990)).

The case law does not establish whether abandonment <u>nunc</u>

<u>pro</u> <u>tunc</u> can confer standing on the debtor retroactively when the

abandonment occurs after the statute of limitations has expired.

<u>See</u> <u>Sessions v. Romadka</u>, 145 U.S. 29 (1892) (expressing no

opinion whether abandonment of property relates back to the

commencement of the bankruptcy case where the statute of

limitations had run when the abandonment was made); <u>but</u> <u>see</u>,

<u>e.g.</u>, <u>Williams v. United Techs. Carrier Corp.</u>, 310 F. Supp. 2d 1002

(S.D. Ind. 2004) (rejecting the argument that the abandonment

must occur prior to filing suit; but, although the case did not

expressly discuss the statute of limitations, plaintiff filed the

lawsuit within 90 days of receiving the right-to-sue letter and those

90 days expired before the abandonment occurred); Southern

District of Indiana Case No. 1:02-cv-01036 (d/e 1) (accessed via

Public Access to Court Electronic Records (PACER)).

      The only case that appears to expressly address the issue is

the case cited by Defendant.  In <u>Barletta</u>, 121 B.R. 669, the

plaintiff-debtor disclosed a potential Fair Debt Collection Practices

Act (FDCPA) claim on his bankruptcy schedule.  <u>Id.</u> at 671.

Although the bankruptcy trustee had expressed an intention to

abandon the claim, the trustee did not do so.  After the plaintiff was

discharged in bankruptcy but eight months before the bankruptcy

case was closed, the plaintiff filed a timely lawsuit on the disclosed

claim.  <u>Id.</u> at 671-72.   By the time the bankruptcy case was closed

and title to the claim reverted to the plaintiff, the statute of

limitations on the FDCPA claim had expired.

The defendant in the FDCPA lawsuit sought to dismiss the lawsuit on the basis that the plaintiff lacked standing.  Barletta, 121 B.R. at 671.  The district court considered whether the plaintiff could maintain the action when he did not have standing when he filed suit and the statute of limitations had since expired.  The court found that dismissing the claim for lack of standing "would create the inequitable result of extinguishing the plaintiff's claim through the inaction of the trustee, who did not intend to pursue the claim but did not abandon it, while at the same time preventing the plaintiff from taking action until it was too late."  Id. at 674.  The court rejected the defendant's argument that the plaintiff could have requested abandonment pursuant to 11 U.S.C. § 554(b) because the request was no guarantee of abandonment and the statute of limitations could have run even if the property had eventually been abandoned.  Id.  The court ultimately concluded that "upon the closing of plaintiff's bankruptcy case, title in his claim reverted to him as if no bankruptcy had ever been filed and the plaintiff held title continuously."  Id.

The Bartletta case is distinguishable to the extent that the plaintiff-debtor advised the bankruptcy trustee of the claim and the

trustee's inaction required that plaintiff file suit before title to the claims revested in the plaintiff.  Nonetheless, the court still expressly found that the claims reverted to the debtors as if no bankruptcy had ever been filed and that the plaintiff held the title continuously.  The <u>Barletta</u> case is persuasive authority that, upon abandonment, title to the claims reverted to Plaintiffs <u>nunc</u> <u>pro</u> <u>tunc</u> even though the statute of limitations expired before the bankruptcy trustee abandoned the claims.

Moreover, the Seventh Circuit has recognized that one of the purposes of retroactive vesting is to "protect against the running of the statute of limitations."  <u>Morlan</u>, 298 F.3d at 617 (also noting that the sequence of events in that case did not matter "for when property of the bankrupt is abandoned, the title reverts to the bankrupt, <u>nunc</u> <u>pro</u> <u>tunc</u>, so that he is treated as having owned it continuously") (internal quotation marks omitted).

The Court notes that <u>nunc</u> <u>pro</u> <u>tunc</u> reversion is a fiction of convenience and not intended to be "blindly followed to a result that is unjust."  <u>Wallace v. Lawrence Warehouse Co.</u>, 338 F.2d 392, 394 n.1 (9th Cir. 1964); <u>In re Hat</u>, 363 B.R. 123, 141 (Bankr. E.D. Cal. 2007) (finding the equities favored abandonment <u>nunc</u> <u>pro</u> <u>tunc</u> to

provide the debtor with the requisite insurable interest).  However, the equities favor applying <u>nunc</u> <u>pro</u> <u>tunc</u> reversion here because, by doing so, the refund claim is preserved.  In addition, the purpose of the requirement that refund claims be filed with the IRS is to give "the Government a full opportunity to address the problem administratively."  <u>Greene-Thapedi v. United States</u>, 549 F.3d 530, 533 (7th Cir. 2008).  That purpose was achieved by Plaintiffs filing the claims in 2005 even though, at the time they filed those claims and before abandonment by the trustee, they lacked standing to do so.

In sum, Plaintiffs timely filed the claim with the IRS—even though they technically lacked standing at the time because the claims belonged to the bankruptcy trustee.  The abandonment of the claims by the bankruptcy trustee had the effect of reverting title to Plaintiffs back to the date they filed the bankruptcy petition such that they, by operation of the abandonment, actually had standing all along.  <u>Morlan</u>, 298 F. 3d at 617 (upon abandonment, title reverts to the bankrupt <u>nunc</u> <u>pro</u> <u>tunc</u> and he is treated has having owned the property continuously).  Consequently, the refund claims

were "duly filed" with the IRS, and this Court has jurisdiction over the claims.

**B.    Plaintiffs Have Standing to Maintain this Lawsuit**

Defendant also argues that Plaintiffs lacked standing to file this lawsuit for the 1996, 1997, and 2001 refund claims.  According to Defendant, Plaintiffs did not have standing to bring the claims when this suit was filed because only the bankruptcy trustee could bring the suit at that time and standing cannot be cured after suit is filed.

Courts have generally recognized both constitutional and prudential limitations on the federal courts' jurisdiction.  G & S Holdings LLC v. Cont'l Cas. Co., 697 F.3d 534, 540 (7th Cir. 2012). To establish Article III constitutional standing, a plaintiff must demonstrate that he suffered an injury in fact, there is a causal connection between the injury and the conduct complained of, and it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Constitutional standing must exist at the time the lawsuit is filed. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000).

Courts have also recognized a type of non-constitutional standing called "prudential standing," which has been applied to prohibit a litigant from raising another person's legal right (third-party standing), to bar the adjudication of generalized grievances, and to require that a plaintiff's complaint fail within the zone of interests protected by the law invoked.  <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1386 (2014); <u>see also</u> <u>Hodei v. Irving</u>, 481 U.S. 704, 711 (1987) (prudential standing requires that a plaintiff assert his own legal rights and interests). Prudential standing is a judge-made doctrine, is not jurisdictional, and can be waived or forfeited.  <u>See</u> <u>Main Street Org. of Realtors v. Calumet City, Ill.</u>, 505 F.3d 742, 745 (7th Cir. 2007) ("This doctrine precludes the federal courts from exercising jurisdiction over some types of case that Article III would not forbid the courts to adjudicate."); <u>Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.</u>, 733 F.3d 761, 771 (7th Cir. 2013) (prudential standing is not jurisdictional); <u>G & S Holdings</u>, 697 F.3d at 540 (prudential standing can be waived).  Prudential standing concerns can be cured after the lawsuit is filed.  <u>Swearingen-El v. Cook Cnty. Sheriff's Dep't</u>, 456 F. Supp.2d 986, 989-90 (N.D. Ill. 2006)

(distinguishing constitutional and prudential standing and finding the plaintiff-debtor became the proper party in interest to bring the lawsuit after he reopened his bankruptcy case and converted his bankruptcy to a Chapter 13); Kurchack v. Life Ins. Co. of N. Am., 725 F. Supp. 2d 855, 861 (D. Ariz. 2010) (lack of prudential standing can be cured).

The Supreme Court recently criticized the prudential standing doctrine, noting that the idea is in tension with the Supreme Court's recognition that a federal court had a "virtually unflagging" obligation to hear and decide the cases within the court's jurisdiction.  Lexmark, 134 S. Ct. at 1386 (citing cases); see also United States v. Funds in the Amount of $239,400, 795 F.3d 639, 645 (7th Cir. 2015) (recognizing that Lexmark "cautioned that labels like 'prudential standing' and 'statutory standing' are misleading and should be avoided").  Nonetheless, the Lexmark case addressed whether a particular plaintiff fell within the class of plaintiffs that Congress authorized to sue under the statute.  Lexmark, 134 S. Ct. at 1387 (finding that courts "cannot limit a cause of action that Congress has created merely because 'prudence' dictates").  The Court expressly declined to address the issue of prudential

limitations on third-party standing and held that "consideration of

that doctrine's proper place in the standing firmament can await

another day." Id. at 1387 n. 3.   Because this case involves the

issue of third-party standing (i.e., whether Plaintiffs were raising

another person's legal rights when they filed this lawsuit), which the

Supreme Court expressly declined to address the viability of in

Lexmark, this Court will consider whether Plaintiffs have

demonstrated constitutional standing and are proper parties in

interest to pursue this lawsuit.

Plaintiffs here have demonstrated constitutional standing.

They have alleged a concrete injury (overpayment of taxes), fairly

traceable to Defendant's conduct (failure to refund the taxes), that

can be redressed by the Court if the Court awards the refund.  See,

e.g., Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir.

2004) (finding the plaintiff had constitutional standing to pursue

his tax refund claims but lacked prudential standing when he filed

the action because the bankruptcy estate was the real party in

interest at that time and no abandonment had occurred);  Williams

v. United Techs. Carrier Corp., 310 F. Supp. 2d 1002, 1010 (S.D.

Ind. 2004) (finding the plaintiff had constitutional standing because

he was the individual who suffered discrimination but he did not have prudential standing at the time he filed suit because was not the real party in interest at that time due to the bankruptcy filing and no abandonment had yet occurred; the plaintiff later obtained prudential standing when the bankruptcy action was closed and the scheduled claim reverted to the plaintiff).

What is truly at issue is prudential standing—whether Plaintiffs were asserting their own legal rights and interests and were, therefore, the proper parties to file the lawsuit.  See, e.g., Swearingen-El, 456 F. Supp.2d at 989-990  (rejecting the argument that the Chapter 7 debtor did not have Article III standing when suit was filed and noting the issue was "a prudential standing one—specifically the real party in interest doctrine"); Muhammad v. Aurora Loan Servs., LLC, No. 13-cv-01915, 2015 WL 1538409, at *4 (N.D. Ill. Mar. 31, 2015) (finding that the debtor's "lack of standing raises issues of his own status as the real party in interest under Federal Rule of Civil Procedure 17, not the Court's power to adjudicate the cause of action").  Defendant argues that Plaintiffs were asserting the rights and interests of the bankruptcy trustee, who had sole authority to bring the lawsuit when it was filed.

Plaintiffs argue that Defendant forfeited the prudential standing argument by failing to raise the argument until three years after commencement of the case and only after discovery has closed.  As noted above, prudential standing is not jurisdictional and can be forfeited.  Edgewood, 733 F.3d at 771; G & S Holdings, 697 F.3d at 540.  The record reflects that Defendant did not raise lack of prudential standing as an affirmative defense until August 18, 2016.  Compare Answer to Am. Compl. (d/e 22) (filed September 15, 2014) with Answer to Sec. Am. Compl. (d/e 66).

Even assuming Defendant did not waive its objection to prudential standing, the Court finds, for the same reasons stated above regarding standing to file the claims with the IRS, that the bankruptcy trustee's abandonment of the claims revested Plaintiffs with prudential standing such that the complaint was properly filed.  See, e.g., Williams, 310 F Supp. 2d at 1012 (finding that the plaintiff's discrimination suit filed before the claim was abandoned by the bankruptcy trustee reverted to him when the bankruptcy case was closed, and treating the plaintiff as having continuously owned the claim).

Some courts describe the real party in interest requirement of Rule 17 of the Federal Rules of Civil Procedure as a codification of prudential standing.  <u>Rawoof v. Texor Petroleum Co., Inc.</u>, 521 F.3d 750 (7th Cir. 2008) (citing cases for that proposition without taking a position).  Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it has been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3); <u>see also</u> 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, <u>Federal Practice and Procedure</u> § 1555 (3d ed.) (2016 update) (noting that a correction in parties under Rule 17 is permitted even after the statute of limitations has run).  The Advisory Committee Notes indicate that this rule is intended to "prevent forfeiture" when determination of the proper party is difficult or when an understandable mistake has been made.  Fed. R. Civ. P. 17 Advisory Committee Notes, 1966 Amendment; <u>see also</u>, <u>Dunmore</u>, 358 F.3d at 1112-13 (assuming that abandonment of the asset by the trustee could constitute a ratification of the lawsuit, the court concluded that ratification had the same effect as if the

estate originally commenced the action, but only if the plaintiff's decision to sue in his own name was an understandable mistake and not a strategic decision); Eaton v. Taskin, Inc., No. 07-3056, 2007 WL 2700554, at *6 (C.D. Ill. 2007) (granting the bankruptcy trustee's motion to be substituted as the real party in interest where the defendant neither disputed that the plaintiff filed the action as a result of an understandable mistake nor disputed the absence of prejudice).

Defendant does not dispute that the mistake was understandable or that Defendant will not be prejudiced.  See Reply at 4 (d/e 74) (only arguing that Rule 17 does not overcome the fact that Plaintiffs did not acquire the claim until after the statute of limitations ran and that Rule 17 cannot waive sovereign immunity). Therefore, the Court finds that the abandonment nunc pro tunc constituted ratification of the lawsuit such that the action proceeds as if it has been originally commenced by the real party in interest.

## C.   Resolution of Defendant's Judicial Estoppel Argument is Inappropriate in this Case on a Motion to Dismiss

Defendant last argues that Plaintiffs are judicially estopped from bringing the 1996, 1997, and 2001 refund claims.  Defendant

asks the Court to draw the reasonable inference that Plaintiffs had the motive to conceal their refund claims because Plaintiffs did not advise the bankruptcy court of the refund claims until 2014, roughly nine years from the date the claims were filed with the IRS and after the lawsuit had been pending for almost one year.

Plaintiffs argue that they were not aware of the tax refund claims until three years after the filing of their bankruptcy petition. Plaintiffs claim they did not act in bad faith when they filed their refund claims.  Resp. at 15-16 (d/e 68).  Finally, Plaintiffs assert that the IRS did not issue a final decision on the claims until May 2011.  Plaintiffs thereafter timely filed this lawsuit and gave notice of the claims to the bankruptcy trustee.  The bankruptcy trustee then abandoned the claims.

In general, judicial estoppel prevents a party from prevailing on a position in one litigation and then taking an inconsistent position in another litigation.  See Zedner v. United States, 547 U.S. 489, 504 (2006); Matter of Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process.").  Judicial estoppel may not be appropriate, however, where the "party's prior position was based

on inadvertence or mistake." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 753 (2001) (internal quotation marks and citation omitted). The decision whether to apply judicial estoppel is "a matter of equitable judgment and discretion." <u>In re Knight-Celotex, LLC</u>, 695 F.3d 714, 721 (7th Cir. 2012).

Courts have applied judicial estoppel where a debtor conceals a legal claim and denies owning the asset in bankruptcy, receives a discharge in bankruptcy, but then tries to recover on that legal claim. <u>See</u> <u>Cannon-Stokes v. Potter</u>, 453 F.3d 446, 448 (7th Cir. 2006). While the Seventh Circuit has held that judicial estoppel is appropriate where the plaintiff never disclosed her claim to the bankruptcy court, <u>see</u>, <u>id.</u>, the more difficult question is whether judicial estoppel applies where the plaintiff-debtor attempts to rectify his prior omission by amending his bankruptcy filings. <u>See</u> <u>Smith v. Am. Gen. Life Ins. Co.</u>, 544 F. Supp. 2d 732, 735 (C.D. Ill. 2008) (Mills, J.) (citing cases from other appellate courts that have nonetheless rejected "such procedural chicanery").

Courts in this district have held that judicial estoppel bars a previously undisclosed claim—even where the debtor ultimately discloses the claim—unless the prior omission was inadvertent or

mistaken.  See Smith, 544 F. Supp. 2d at 735 n. 6 (distinguishing cases not applying judicial estoppel where the debtor reopened the bankruptcy case to schedule a previously omitted claim on the basis that the claims in those cases were being pursued for the benefit of the creditors, not the plaintiffs); Bland v. Rahar, No. 06-3072, 2008 WL 109388, at *3 (C.D. Ill. Jan. 9, 2008) (Scott, J.) (noting that it may be inappropriate to apply judicial estoppel where the party innocently and inadvertently failed to disclose an existing claim in his or her bankruptcy disclosures).  The failure to disclose a claim is deemed inadvertent or mistaken only when the debtor lacked knowledge of the factual basis of the undisclosed claim at the time of his bankruptcy or had no motive to conceal the claim. Smith, 544 F. Supp. 2d at 735-36 (finding judicial estoppel barred the plaintiff's claim even though he reopened his bankruptcy case and amended his schedules after his motion to dismiss the defendant's counterclaim was denied); Bland, 2008 WL 109388 at *3 (finding judicial estoppel barred the plaintiff's lawsuit where the plaintiff sought to reopen the bankruptcy case and list the legal claim only after the defendant filed a motion for summary judgment

noting the plaintiff's failure to list the claim in his bankruptcy action).

Because the Court has to view the facts in the light most favorable to Plaintiffs on a motion to dismiss, the Court will not apply judicial estoppel at this time.  David v. Wal-Mart Stores, Inc., No. 11 C 8833, 2014 WL 5510986, at *3 (N.D. Ill. Oct. 24, 2014) (noting that the court could not find, on a motion to dismiss, that the plaintiff was judicially estopped from pursuing his claim where the plaintiff contended that his failure to disclose was inadvertent and the materials considered on a motion to dismiss, when viewed in the plaintiff's favor, supported the factual premise that the failure to disclose was inadvertent).  Here, Plaintiffs essentially claim that the failure to disclose the claim earlier was inadvertent.  The bankruptcy court documents, of which the Court may take judicial notice, support this conclusion when taken in the light most favorable to Plaintiffs.

Plaintiffs did not know about the refund claims until 2004 or early 2005, well after Plaintiffs were discharged in bankruptcy in October 2002, although before the Bankruptcy Action was closed in July 2005.  Plaintiffs eventually disclosed the refund claims to the

bankruptcy trustee in 2014, apparently before the issue of judicial estoppel was raised by Defendant.  In that regard, this case is unlike those applying judicial estoppel where the plaintiff only disclosed the claim to the bankruptcy court after the defendant raised the issue.  See, e.g., Bland, 2008 WL 109388 at  *3 (finding, on summary judgment, that judicial estoppel barred the plaintiff's lawsuit where the plaintiff sought to reopen the bankruptcy case and list the legal claim only after the defendant filed a motion for summary judgment noting the plaintiff's failure to list the claim in his bankruptcy action).  These facts, when taken in the light most favorable to Plaintiffs, suggest that the failure to disclose the claims was inadvertent.

On the materials properly before the Court on a motion to dismiss, the Court cannot find that judicial estoppel clearly applies. Therefore, the Court denies Defendant's motion to dismiss on the basis of judicial estoppel.  Defendant may argue at trial that judicial estoppel applies to bar Plaintiffs' claims.  See, e.g., Matthews, 316 F. App'x at 523 (finding judicial estoppel could not be resolved on a motion to dismiss in that case and that an evidentiary hearing may be necessary for the district court to make a factual determination

regarding the nature and extent of the disclosures the debtor made
to the trustee).

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss
Plaintiffs' 1996, 1997, and 2001 Claims for Refund (d/e 64) is
DENIED.  This case is set for a Final Pretrial Conference on March
6, 2017 at 3:30 p.m.  This case is set for Bench Trial on March 21,
2017 at 9:00 a.m.

ENTER: January 5, 2017

FOR THE COURT:

_s/Sue E. Myerscough_
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE